## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **KEITH LANDRY, ET AL.** | * | **CIVIL ACTION** |
| **VERSUS** | * | **NO. 06-181** |
| **STATE FARM FIRE & CASUALTY CO., ET AL.** * | | **SECTION "L"(2)** |

### ORDER AND REASONS

Before the Court is the Motion to Remand of Plaintiffs, Keith Landry and Marcelle Landry.  This motion was set for hearing on March 1, 2006; however, upon request of counsel, oral argument was scheduled for March 29, 2006.  For the following reasons, the Plaintiffs' motion is GRANTED.

### I.  Factual and Procedural Background

This case arises from a dispute regarding homeowner's and flood insurance coverage for Plaintiffs' home, located at 5825 West End Boulevard in New Orleans, Louisiana.  Plaintiffs allege that their home was destroyed during Hurricane Katrina on August 29, 2005.  Defendants in this case are State Farm Fire and Casualty Company ("State Farm"), Plaintiffs' homeowner's and flood insurance carrier, and Charles A. Lagarde, an agent of State Farm who was responsible for management of Plaintiffs' policies.

Plaintiffs allege that in 2000 when they purchased their home, State Farm placed them in touch with agent Tony Bordlee, who assisted them in obtaining their homeowner's policy and flood insurance policy.  Mr. Bordlee served as Plaintiffs' contact with State Farm from 2000 to 2003.  However, in January 2003, Plaintiffs asked State Farm for their policies to be transferred to another agent because they were dissatisfied with Mr. Bordlee's services.  In 2003, State Farm referred Plaintiffs to Defendant Charles Lagarde.

-1-

After the transfer in 2003, Plaintiffs allege that they asked Mr. Lagarde to review their coverages to ensure that they received the best coverage available.  Mr. Lagarde agreed to do so, according to Plaintiffs.  From 2003 until August 2005, Mr. Lagarde and State Farm would periodically request increases in coverage, according to Plaintiffs, and Plaintiffs believed that they had full coverage on their home.

After Hurricane Katrina, Plaintiffs allege that they learned that they did not have coverage for the contents of their home.  Defendant State Farm paid out $137,200, the full "dwelling" coverage, according to Plaintiffs; however, none of this payment was for contents.  In October 2005, Plaintiffs allege that State Farm denied them coverage for contents and stated that the reason was lack of coverage.

On December 14, 2005, Plaintiffs filed the instant suit against State Farm and Mr. Lagarde in Civil District Court for the Parish of Orleans, State of Louisiana.  For the allegedly negligent failure to provide coverage, Plaintiffs seek recovery of the full amount of the contents of their home, including damages, penalties, and attorneys' fees.  Plaintiffs further argue that Mr. Lagarde as State Farm's agent had a duty of reasonable diligence that he violated when he allegedly failed to review the Plaintiffs' coverage for its adequacy.

Defendants timely removed the suit on January 13, 2006.  On February 9, 2006, Plaintiffs filed the instant Motion to Remand.  The parties argue that the instant motion presents novel jurisdictional questions that will affect other, similar suits regarding flood insurance coverage in the aftermath of Hurricane Katrina.  They further allege that this is the first such "post-Katrina" remand motion.

**II.  Plaintiffs' Motion to Remand**

Defendants base jurisdiction on federal question under 42 U.S.C. § 4072 and under 28 U.S.C. § 1331.  Alternatively, defendants predicate jurisdiction on complete diversity under 28 U.S.C. § 1332, and argue that Defendant Charles Lagarde is improperly or fraudulently joined with State Farm in this action.  The Court addresses these arguments in turn.

**a.      Federal Question - the NFIA**

The National Flood Insurance Act ("NFIA") grants federal courts original exclusive jurisdiction over lawsuits against the Director of FEMA for denials of claims made by insured individuals under their Standard Flood Insurance Policy ("SFIP").  42 U.S.C. § 4072.  While the plain language of Section 4072 only addresses suits against the Director of FEMA, the Fifth, Sixth, and Third Circuits have held that Section 4072 applies to lawsuits against private insurers who issue SFIPs under the Write Your Own ("WYO") program.  *See Wright v. Allstate Ins. Co.*, 415 F.3d 384, 389 (5th Cir. 2005); *Gibson v. Am. Bankers Ins. Co*, 289 F.3d 943, 947 (6th Cir. 2002); *Van Holt v. Liberty Mut. Fire Ins. Co.*, 163 F.3d 161, 166-67 (3d Cir. 1998).

In this case, Plaintiffs have made tort claims against State Farm, a WYO insurer, and State Farm's agent for errors and omissions arising from their homeowner's and flood insurance policies.  Plaintiffs phrase their cause of action as an tort action for errors and omissions under Louisiana state law.  See Petition for Damages, ¶¶ 15 and 16 (citing to Louisiana case law and statutes dealing with tortious errors and omissions of insurance agents).  However, Defendants argue that Plaintiffs' claim for errors and omissions is preempted by federal law.

While it is clear that causes of action under the NFIP agreement itself are questions of federal law, the parties in this case dispute whether state law tort claims relating to the NFIP

arise under state or federal law.  In *Wright v. Allstate Insurance Co.*, the Fifth Circuit addressed

the question of whether state law causes of action for improper claims adjustment were

preempted by the NFIA. 415 F.3d  at 388-89.  The plaintiff in that case had purchased an NFIP

from Allstate to cover his home in Houston, and the home suffered damage during Tropical

Storm Allison in 2001.  *Id.* at 386.  The plaintiff alleged that Allstate's adjuster failed to make an

appropriate estimate of the damage to his home, and Allstate alleged that plaintiff was not

properly paid under the policy because he failed to comply with FEMA regulations on

documentation of his losses.  *Id.*  The plaintiff brought a variety of causes of action against

Allstate under Texas state law arising from the adjustment of his claim.  *Id.*  Thus, the question

presented to the Fifth Circuit was whether the plaintiff's state law causes of action were

preempted by the NFIA such that the case presented a federal question.  *Id.* at 389.

The Fifth Circuit found that adjustment of an insurance claim is considered "handling,"

and, as such, the NFIA would preempt any state law claims.  *Id.* at 390 ("state law tort claims

arising from claim *handling* by a WYO are preempted by federal law.") (emphasis added).

However, the Fifth Circuit has not had the occasion to determine whether a state law tort claim

for errors and omissions like the Plaintiffs' claim would be considered "handling," and the Fifth

Circuit has not determined whether state law claims for improper "procurement" would be

preempted by the NFIA.

The Fifth Circuit addressed a case that was factually similar to the instant one in *Spence*

*v. Omaha Indemnity Insurance Company*, 996 F.2d 793 (5th Cir. 1993).  In that case,

homeowners brought claims for fraudulent misrepresentation and breach of contract against their

homeowners' insurance policy carrier for its failure to disclose a lack of coverage for a flooded

-4-

basement.  *Id.* at 794.  The Fifth Circuit held that the state's statute of limitations applied to the Plaintiffs' claims.  *Id.* at 796-97.  Certain language in that opinion appeared to imply that the Plaintiffs' claims, which involved procurement of their policy, fell under state law and were not preempted by the NFIA.  *Id.*

However, the Fifth Circuit in *Wright* stated that its decision in *Spence* did not address the issue at hand in this case – whether state law tort claims relating to policy procurement are preempted by the NFIA.  *Wright*, 415 F.3d at 389-90 ("the issue of whether the NFIA preempted state law tort claims was not before the court in *Spence*, and the court did not address it").  Thus, the Fifth Circuit has not addressed whether state law claims regarding procurement of policies would be preempted by the NFIA.

Although the Fifth Circuit has not spoken directly on this issue, a number of district courts have held that federal question jurisdiction does not exist for claims related to flood insurance procurement.  *Waltrip v. Brooks Agency, Inc.*, 417 F.Supp.2d 768, 770 (E.D. Va. 2006); *Roybal v. Los Alamos National Bank*, 375 F.Supp. 2d 1324, 1332-33 (D. N.M. 2005)*; Corliss v. South Carolina Ins. Co.*, No. 03-2944, 2004 WL 2988497, at *3 (E.D. La. Dec. 12, 2004) (Vance, J.);  *Elizabeth v. USAA Gen. Indem. Co.*, No. 02-2021, 2002 WL 31886719, at *3 (E.D. La. Dec. 19, 2002) (Vance, J.).

The distinction that other courts have made between handling and procurement of an NFIA policy for purposes of federal question jurisdiction is compelling.  The federal courts premise their jurisdiction under the NFIA upon the fact that policies under the National Flood Insurance Program are paid from the federal treasury; thus, claims regarding handling of those policies also involve the spending of federal funds.  *See Waltrip*, 417 F.Supp.2d at 771-72.

However, under the NFIA, federal funds are not used to reimburse WYO insurers for liability arising outside of the scope of the Act.  44 C.F.R. Pt. 62, App. A, Art. IX.  Thus, for tort claims or extra-contractual claims related to an NFIA policy, an insured can obtain no reimbursement from the federal treasury because these claims fall outside the scope of the Act.  Therefore, there is no equivalent justification for federal jurisdiction for state law tort claims because there is no expenditure of federal funds.  *Waltrip*, 417 F.Supp.2d at 771-72.  The distinction between handling and procurement is well-supported by case law, and the Court believes claims involving procurement of NFIA policies do not fall within the Court's federal question jurisdiction.

State Farm disagrees with this distinction, and argues that the law has changed recently due to the Fifth Circuit's opinion in *Wright* and due to FEMA's changes in its regulations regarding reimbursement of WYO insurers.  First, State Farm argues that in *Wright* the Fifth Circuit abandoned the case law's dichotomy between procurement and handling.  The Court disagrees.  While the Fifth Circuit mentioned the prior distinction between procurement and handling, *Wright,* 415 F.3d at 389 and 389 n.3, the opinion does not abandon the distinction.  Instead, the Fifth Circuit stated only that policy handling falls exclusively within federal question jurisdiction.  *Id.* at 389-90.  The Fifth Circuit made no statement regarding whether policy procurement would be a federal question, and did not reject prior case law which made the distinction between handling and procurement.

Second, State Farm argues that recent changes to FEMA regulations indicate that actions relating to policy procurement should be exclusively federal questions.  Specifically, State Farm points to the language of 44 C.F.R. Pt. 62, App. A, Art. I, which reads in relevant part as follows:

"any litigation resulting from, related to, or arising from the Company's compliance with the written standards, procedures, and guidance issued by FEMA or FIA arises under the Act, regulations, or FIA guidance, and legal issues thereunder raise a federal question[.]"

The Court believes State Farm's interpretation of this regulation is incorrect. The case at hand is a cause of action for errors and omissions of State Farm's agent relating to his alleged failure to obtain contents coverage for Plaintiffs' home.  State Farm's liability arises through that agent and his extra-contractual duty of reasonable diligence; therefore, the Plaintiffs' claims do not result from, relate to, or arise from State Farm's compliance with FEMA regulations under an NFIP policy.   Moreover, although FEMA has displayed an intention for federal jurisdiction related to NFIP policies, the same regulation cited by State Farm also provides that FEMA will not reimburse a WYO insurer for errors and omissions claims.  44 C.F.R. Pt. 62, App. A, Art. IX ("Further, (i) if the claim against the Company is grounded in actions significantly outside the scope of this Arrangement or (ii) if there is negligence by the agent, FEMA will not reimburse any costs incurred due to that negligence").  Thus, federal funds will not be implicated in this dispute, an errors and omissions claim, because State Farm would not be eligible for reimbursement by the federal government for these claims.

The Court believes that *Wright* and the updated FEMA regulations do not change the underlying rationale for the handling and procurement distinction for purposes of federal question jurisdiction, that is, that claims for handling of an NFIP policy present federal questions because federal funds are implicated in their disposition.  Because this distinction is sound and is

supported by the case law, the Court shall continue to follow this distinction.[1]

The parties also dispute whether this case presents a cause of action for policy handling or procurement.  Plaintiffs argue that the case involves procurement, in that the agent is alleged to have failed to obtain contents coverage for their home.  Defendants argue that the case involves handling because Plaintiffs sought contents coverage during a policy renewal, which Defendants argue is heavily regulated by FEMA.  The Court finds that this case presents a question of policy procurement, in that it involves the initial obtaining of coverage.  The Court notes that many aspects of NFIPs are heavily regulated by FEMA; however, the obtaining of coverage does not involve the interpretation or management of an active NFIP.  Because this case involves procurement, the Court believes it does not present a federal question.

In conclusion, the Plaintiffs' claims against State Farm and Mr. Lagarde for their failures to provide contents coverage for their home are claims relating to procurement and errors and omissions, and therefore do not fall under federal question jurisdiction.  Because Defendants

---

[1]  State Farm also argues that the Court should analyze this dispute under the framework set forth in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 125 S.Ct. 2363, 2368 (2005).  This case is the latest pronouncement from the United States Supreme Court regarding state law cases that present federal questions because they turn on substantial questions of federal law.  *See Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180 (1921).  The Court has repeatedly recognized that this type of "arising under" federal question jurisdiction is limited in scope.  *See Grable*, 125 S.Ct. at 2367-68.  The instant case does not fall within the *Grable* category.  Although there is no single test, a state law case presents a federal question if the claim "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities."  *Id.* at 2368.  There is no substantial question of federal law in this case, as it involves a claim for errors and omissions under Louisiana state law and does not involve the interpretation of any federal insurance policy.  Moreover, the congressionally-approved balance between state and federal responsibilities is spelled out in 44 C.F.R. Pt. 62, App. A, Art. IX:  WYO insurers are not eligible for federal funds for claims relating to the negligence of their agents.  Therefore, this case does not present a federal question under *Grable*.

cannot claim federal question jurisdiction, the Court addresses the Defendants' argument for fraudulent joinder.

### b.      Fraudulent Joinder

Defendants argue that complete diversity jurisdiction exists pursuant to 28 U.S.C. § 1332 because Plaintiffs are Louisiana residents and because State Farm is an Illinois corporation with its principal place of business in Illinois.  While Defendant Charles Lagarde is a resident of Louisiana, Defendants argue that he was fraudulently joined in this matter by Plaintiffs to defeat the Court's diversity jurisdiction.

Title 28, United States Code, Section 1441(b) provides that a case filed in a state court is removable "only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."  Thus, a removing plaintiff must demonstrate that all defendants in the case are completely diverse from the plaintiffs, and that none of the defendants are citizens of the state in which the action was filed.  On its face, Plaintiff's Petition for Damages fails to meet the standard of Section 1441(b).  Charles Lagarde is not diverse from the Plaintiffs, and he is a citizen of Louisiana, where the action was filed.

However, Defendants allege that Charles Lagarde was joined solely to defeat federal diversity jurisdiction.  District courts have a duty to inquire whether parties are improperly or collusively joined, either to create diversity jurisdiction or to destroy jurisdiction.  *Smallwood v. Illinois Central Railroad Co.*, 385 F.3d 568, 572-73 (5th Cir. 2004).  The Fifth Circuit has recognized two ways in which a party may be improperly or fraudulently joined: 1) actual fraud in the pleading of jurisdictional facts, or 2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.  *Smallwood*, 385 F.3d at 573 (citing *Travis v. Irby*,

326 F.3d 644, 646-47 (5th Cir. 2003)).

The instant case concerns the second method of improper joinder.  Under this method, joinder is improper if "there is no reasonable basis for the district court to predict that the plaintiff might able to recover against an in-state defendant."  *Smallwood*, 385 F.3d at 573.  The district court generally conducts a Rule 12(b)(6)-type analysis to determine whether the plaintiff has stated a cause of action against the in-state defendant.  *Id.*  In rare cases involving defective allegations in pleadings, a district court may pierce the pleadings and conduct a summary-judgment type inquiry.  *Id.*  Also, "the party seeking removal bears a heavy burden of proving that the joinder of the in-state party was improper."  *Id.* at 574.

In their Petition for Damages, Plaintiffs allege that Lagarde agreed to "review all coverages and to provide them with the best coverage available[,]" Paragraph 9, and "told them that their coverage was adequate[,]" Paragraph 10, among other allegations.  Plaintiffs allege that Mr. Lagarde "owed Petitioners a duty of reasonable diligence[,]" which was heightened by Plaintiffs' alleged specific request in 2003 for Mr. Lagarde to review their coverage.  Plaintiffs further allege that they relied on Mr. Lagarde's representations, and that they believed he had reviewed the policy because he continued to request increases in coverage.

On its face, these allegations state a claim against Charles Lagarde.  Under Louisiana law, an insurance agent has a fiduciary duty to the insured, and is liable for his own fault or neglect.  *Offshore Prod. Contractors, Inc. v. Republic Underwriters Ins. Co.*, 910 F.2d 224, 229 (5th Cir. 1990).  A plaintiff must prove three elements to demonstrate the agent's liability: 1) an undertaking or agreement by the broker to procure insurance; 2) failure of the agent to use reasonable diligence in attempting to place the insurance and failure to notify the client promptly

-10-

if he has failed to obtain the insurance; and 3) actions by the agent warranting the client's assumption that the client was properly insured.  *Id.* (citing *Karam v. St. Paul Fire & Marine Ins. Co.*, 281 So.2d 728, 730-31 (La. 1973)).  Plaintiffs have alleged all three elements in their Petition for Damages.

Because the Petition for Damages on its face states a claim against Defendant Charles Lagarde, the Defendant is not fraudulently joined.  Therefore, because there is no federal question jurisdiction and no diversity jurisdiction, the Court shall remand the case to Civil District Court.

## III.  Conclusion

Accordingly, Plaintiffs' Motion to Remand is GRANTED.  IT IS ORDERED that the case shall be remanded to the Civil District Court, Parish of Orleans, State of Louisiana.

New Orleans, Louisiana, this __24th__ day of April, 2006.

UNITED STATES DISTRICT JUDGE

-11-